IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LISA AKI MARTIN,<br><br>             Plaintiff,<br><br>   vs.<br><br>LLOYD J. AUSTIN III, SECRETARY,<br>DEPARTMENT OF DEFENSE,<br><br>             Defendant. | CIV. NO. 21-00284 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ECF NO. 24 |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT, ECF NO. 24

## I. <u>INTRODUCTION</u>

Before the court is a Motion by Defendant Lloyd J. Austin III, Secretary of the Department of Defense ("DOD" or "Defendant") requesting dismissal of all claims asserted by Plaintiff Lisa Aki Martin or, in the alternative, summary judgment against those claims.  ECF No. 24.  The court GRANTS the Motion in part under Federal Rule of Civil Procedure 12, dismissing Plaintiff's Title VII discrimination and retaliation claims.  And the court GRANTS the Motion in part under Federal Rule of Civil Procedure 56, granting summary judgment against the remainder of Plaintiff's claims except for her Rehabilitation

Act discrimination and retaliation claims pertaining to her May 2018 and October 2018 accommodation requests.

## II. **BACKGROUND**

### A.    **Factual Background**[1]

During the period relevant to this case—December 2016 through January 2020—Plaintiff worked as a transportation specialist at DOD's Defense POW/MIA Accounting Agency ("DPAA").  ECF No. 25 at PageID # 120, ¶ 7.  The DPAA's work involves investigating, recovering, and identifying the remains of American service members who were lost in prior conflicts, *see* ECF No. 25-2 at PageID # 129, sometimes requiring extensive travel by DPAA personnel along with related logistical support, *see* ECF No. 25-3 at PageID # 139.  As a transportation specialist, Plaintiff was generally responsible for assisting DPAA personnel and partners in coordinating and securing international travel.  ECF No. 34 at PageID # 552, ¶ 2.  Some of her more specific responsibilities are in dispute, however:  Specifically, the parties dispute whether Plaintiff's involvement with passport processing was an essential function of her position or, for that matter, whether she conducted any passport-related work during the relevant time period.

---

[1] Unless otherwise specified, the following facts are not disputed by the parties for the purposes of this Motion.  For some of those undisputed facts, the court cites to Defendant's Concise Statement of Facts, ECF No. 25.

*Compare* ECF No. 24-1 at PageID ## 107–10, *with* ECF No. 33 at PageID ## 541–42.

While Plaintiff was working in the DPAA's Building 4077 facility in December 2016, a co-worker made snide remarks and hostile physical insinuations towards Plaintiff.  *See* ECF No. 25 at PageID # 121, ¶ 12; ECF No. 40 at PageID # 792, ¶ 1.  Plaintiff was frightened by those actions, resulting in her developing post-traumatic stress, anxiety, and generalized depression.  *See* ECF No. 34 at PageID ## 551–52, ¶¶ 1, 3 (citing ECF No. 34-5, supporting diagnoses from Plaintiff's psychiatrist).  Plaintiff reported the incident to her direct supervisor, Ms. Lillian E. Allshouse.  ECF No. 25 at PageID # 121, ¶ 12.

On January 13, 2017, Plaintiff submitted to Ms. Allshouse a request for accommodation in which Plaintiff sought a transfer away from the bothersome co-worker to Building 45 or, alternatively, to telework from home on a primary basis and come into Building 4077 every other Friday (when the bothersome co-worker was off work).[2]  ECF No. 25-19 at PageID ## 336–38.  Notably, both of those accommodations potentially influenced Plaintiff's job performance: Although it appears that many of Plaintiff's duties could be performed using a

---

[2] Plaintiff appears to contend that those requests were not in the alternative, i.e., that she requested to telework and to come into Building 45.  *See* ECF No. 34 at PageID # 551.  But there is incontrovertible evidence that those requests were in the alternative.  *See* ECF No. 25-19 at PageID ## 336–38 (accommodation-request form and the attached note from Plaintiff's psychiatrist).

3

computer (thus making them amenable to inter-facility or at-home remote work, *see* ECF No. 34 at PageID # 552, ¶ 2), working from Building 45 or from home impeded her ability to process passports given that Building 4077 is specially designated by the Department of State as a Federal Acceptance Facility for United States passports. *See* ECF No. 25-3 at PageID ## 149–50, ¶¶ 63–66; *see also* ECF No. 25-25 at PageID ## 361–62 (detailing rigorous procedures Plaintiff must follow to perform passport-related tasks from Building 45).

Ms. Allshouse did not initially agree to the January 2017 accommodation request. ECF No. 34 at PageID # 552, ¶ 4. She instead offered to move Plaintiff to a different floor of Building 4077, but Plaintiff apparently declined that offer because it did not guarantee total separation from the bothersome co-worker. *See* ECF No. 25 at PageID # 121, ¶ 17; ECF No. 34 at PageID # 551, ¶ 17. In February 2017, Plaintiff directed her request higher up the supervisory chain to Chief of Staff George Gagne. *See* ECF No. 34 at PageID # 552, ¶ 5. Mr. Gagne did not officially approve Plaintiff's request, but he did order on February 16, 2017 that Plaintiff be relocated to Building 45 while a formal review of her request was conducted. *See id.* at PageID # 552, ¶¶ 5, 8; ECF No. 25-14 at PageID # 240. Ms. Allshouse facilitated Mr. Gagne's order by arranging Plaintiff's immediate transfer to Building 45. *See* ECF No. 25 at PageID # 121, ¶ 18; ECF No. 25-3 at PageID # 154, ¶¶ 82–83. Later, on November 27,

4

2017, Ms. Allshouse formally granted Plaintiff's accommodation request to work from Building 45 (although Plaintiff had already been working from that building since February 2017).  *See* ECF No. 25 at PageID # 121, ¶ 18.

In March 2017, Plaintiff missed work because of a stomach virus.  *Id.*, ¶ 20.  Having insufficient sick leave, Plaintiff submitted a request to participate in the Voluntary Leave Transfer Program ("VLTP"), wherein her co-workers could donate their leave to cover her absences.  *See id.*  The DPAA denied Plaintiff's VLTP request because it found Plaintiff's medical documentation insufficient to show that her condition was a "medical emergency," as required for VLTP eligibility.  *Id.* at PageID # 122, ¶ 21.  As a result, Plaintiff's absences were designated Absences Without Official Leave ("AWOL").  *Id.*, ¶ 22.  Plaintiff filed an administrative grievance, and while that grievance was pending, Plaintiff supplemented her medical documentation with an explanation as to why the stomach virus caused such an extensive period of absences, namely that Plaintiff's history of gastrectomy surgery prolonged her recovery from the virus.  *See id.*, ¶ 23; ECF No. 25-28.  Based on that additional documentation, Plaintiff's AWOL designations were changed to Leave Without Pay ("LWOP"), and her VLTP request was approved.  ECF No. 25 at PageID # 122, ¶ 23.

In June 2017, Plaintiff missed work due to a surgery related to thyroid cancer.  *See id.*, ¶¶ 24, 27; *see also* ECF No. 25-29 at PageID # 374.  Plaintiff

submitted a VLTP request that was eventually approved, but Ms. Allshouse

calculated the donated leave to be insufficient to cover all of Plaintiff's absences;

Ms. Allshouse emailed Plaintiff to make her aware of that fact.[3]  *See* ECF No. 25

at PageID # 122, ¶¶ 24, 27; ECF No. 25-29 at PageID # 374.  In an ensuing phone

call between the two, Plaintiff maintained that she had sufficient leave to cover her

absences, but Ms. Allshouse disagreed and expressed her intent to charge Plaintiff

with AWOL.  *See* ECF No. 34 at PageID # 552, ¶ 7; ECF No. 40 at PageID # 793,

¶ 7.  Ms. Allshouse ultimately did not charge Plaintiff with AWOL after

discovering that Plaintiff had received more donated leave than first thought.  ECF

No. 25 at PageID # 123, ¶ 30.

   In July 2017, Ms. Allshouse issued a "Memorandum [of] Warning for

Unprofessional Behavior" against Plaintiff for unprofessional conduct on the June

2017 phone call.  ECF No. 25-30 at PageID # 377.  Ms. Allshouse summarizes

Plaintiff's behavior as a disrespectful temper tantrum, marked by Plaintiff's yelling

and making unfounded accusations against Ms. Allshouse in the presence of other

DPAA personnel.  *See* ECF No. 25-3 at PageID # 157, ¶¶ 101–02.  Plaintiff denies

throwing a temper tantrum and instead characterizes Ms. Allshouse's behavior on

---

[3] Plaintiff does not recall whether she applied for leave under the Family and Medical Leave Act ("FMLA") relating to the June 2017 absences.  *Compare* ECF No. 34 at PageID # 551, *with* ECF No. 25 at PageID # 122, ¶ 26.  The evidence indicates that she did not.  *See* ECF No. 25-29 at PageID # 374.

the call as threatening and harassing.  ECF No. 34-1 at PageID # 558, ¶ 11.  In the warning letter, Ms. Allshouse promised to take appropriate disciplinary action if Plaintiff failed to correct her unprofessional behavior.  ECF No. 25-30 at PageID # 377.  No further disciplinary action transpired in 2017.

At some point in mid-to-late 2017, Plaintiff's physician discovered lumps in Plaintiff's breasts—the physician suspected cancer.  ECF No. 34-1 at PageID # 558, ¶ 12.  Plaintiff underwent a bilateral mastectomy in January 2018. *Id.* at PageID # 559, ¶ 13.  Fortunately, Plaintiff's biopsy came back negative for cancer. *Id.*

In May 2018, likely due to lingering complications from the mastectomy, Plaintiff began experiencing fainting spells and was diagnosed with syncope.[4]  *See* ECF No. 34-1 at PageID # 559, ¶ 14; ECF No. 34-3 at PageID ## 569–70, ¶ 1.  With the advice and support of her physician, Plaintiff submitted to Ms. Allshouse a request for accommodation in which Plaintiff sought to telework from home until mid-July 2018.  ECF No. 25-3 at PageID # 159, ¶¶ 108–110.  Plaintiff's physician indicated that working from home was necessary because it was unsafe for Plaintiff to drive while suffering from syncope.  ECF No.

---

[4] "Syncope is the medical term for fainting or passing out," and "is often related to another medical condition that may involve a person's heart, nervous system, or blood flow to the brain." *Larissa V. v. Saul*, 2021 WL 1556892, at *3 n.4 (S.D. Ind. Apr. 19, 2021), *report and recommendation adopted sub nom. Larissa V. v. Kijakazi*, 2021 WL 3560660 (S.D. Ind. Aug. 10, 2021).

34-3 at PageID # 570, ¶¶ 2–3; ECF No. 34-6 at PageID # 596.  On May 23, 2018, Ms. Allshouse denied Plaintiff's request for accommodation, concluding that permitting Plaintiff to work from home would prevent her from "perform[ing] the essential duties of [her] position as a Passport Agent away from the federal workplace."  ECF No. 25-34 at PageID ## 397–98.

In October 2018, Plaintiff again sought an accommodation of at-home telework from Ms. Allshouse.  ECF No. 25 at PageID # 123, ¶ 33.  This request was based on Plaintiff's upcoming breast reconstruction surgery (a follow-up to her prior mastectomy).  *See* ECF No. 34 at PageID # 553, ¶ 13.  Her accommodation request was accompanied by requests for FMLA leave and VLTP leave, as supported by physician notes.  ECF No. 25-35 at PageID # 400; ECF No. 25-36 at PageID # 404 (physician's note on FMLA-request form indicating that Plaintiff would be incapacitated for a period of one month following her reconstruction surgery).  On October 16, 2018, Ms. Allshouse denied Plaintiff's request for accommodation, concluding that permitting Plaintiff to work from home would prevent her from performing her passport duties, "essential functions of [her] position."  ECF No. 25-38 at PageID # 409.  Ms. Allshouse also doubted whether Plaintiff could establish a "disability" in support of her accommodation request.  *See id.*

In that same October 2018 decision, Ms. Allshouse denied Plaintiff's FMLA request because Plaintiff had already used 716 hours of unpaid leave in the preceding 12-month period, well over her entitlement to 480 hours for any 12-month period.  ECF No. 25 at PageID # 123, ¶ 34.  Ms. Allshouse also denied Plaintiff's VLTP request, concluding that Plaintiff's medical documentation was insufficient to establish VLTP eligibility.  *Id.*  Plaintiff supplemented her documentation, and, thereafter, Ms. Allshouse approved the VLTP request.  *Id.*  It appears that even with the donated VLTP leave, Plaintiff was forced to take some leave without pay.  *See* ECF No. 34 at PageID # 554, ¶ 16; *see also* ECF No. 34-1 at PageID # 560, ¶ 18.

Finally, in February 2019, Ms. Allshouse issued a "Notice of Leave Restriction" against Plaintiff that instituted more restrictive procedures and conditions for Plaintiff to use annual leave, sick leave, LWOP, and advanced leave.  *See* ECF No. 25-41 at PageID ## 422–23.  The leave restriction was precipitated by "concerns with [Plaintiff's] attendance and leave use," specifically that Plaintiff had 522 hours of unscheduled absences in the prior 12-month period.  *Id.*; ECF No. 25 at PageID # 123, ¶ 35.

## B.   Procedural Background

On September 29, 2017, Plaintiff filed an equal-employment-opportunity complaint of discrimination ("EEO Complaint") with DOD's

Washington Headquarters Services, Office of Equal Employment Opportunity Programs.  ECF No. 25 at PageID # 119, ¶ 1; ECF No. 25-6; ECF No. 25-7.  The EEO Complaint covered incidents of disability discrimination that allegedly occurred between January 2017 and June 2017 at the DPAA.  *See* ECF No. 25 at PageID # 119, ¶ 1.  Plaintiff amended her EEO Complaint on March 21, 2019 to cover incidents of disability discrimination and retaliation that allegedly occurred after June 2017, up until February 2019.  *Id.*, ¶ 2.  On January 7, 2020, an administrative judge at the Equal Employment Opportunity Commission ("EEOC") issued a decision granting the DPAA's motion for summary judgment against Plaintiff's EEO Complaint.  *Id.* at PageID # 120, ¶ 3.  After the DPAA formally adopted the administrative judge's decision, Plaintiff appealed to the EEOC's Office of Federal Operations, but that Office affirmed the administrative judge's decision on March 31, 2021.  *See id.*, ¶ 4; ECF No. 25-10.  The affirmance included a notice of right to file a civil action in federal district court within 90 days.  ECF No. 25-10 at PageID # 221.

Plaintiff timely filed her Complaint in this court on June 23, 2021. *See* ECF No. 1.  The Complaint covers the incidents summarized above and seeks damages and injunctive relief  "due to [DOD's] discriminatory actions against Plaintiff based upon disability and retaliation."  *Id.* at PageID # 2.  The Complaint's presentation and organization of its factual allegations are less than

clear; the court has done its best to interpret the Complaint in the light most favorable to Plaintiff, and has distilled the Complaint into the following eight incidents: (1) January 2017 accommodation request delay and partial denial; (2) March 2017 momentary denial of leave and AWOL charges; (3) June 2017 threatened AWOL charges; (4) July 2017 warning letter; (5) May 2018 denial of accommodation request; (6) October 2018 denial of accommodation request; (7) October 2018 denial of leave requests; and (8) February 2019 leave restriction. *See id.* at PageID ## 4–10.

In a true "spaghetti approach,"[5] the Complaint distributes all eight of those alleged incidents across four legal claims:  First, a disability discrimination claim under the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.; second, a retaliation claim under the Rehabilitation Act; third, a disability discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; and fourth, a retaliation claim under Title VII.  *See* ECF No. 1 at PageID ## 10–11.

On April 27, 2022, Defendant DOD filed a "Motion to Dismiss Complaint, or in the Alternative, for Summary Judgment."  ECF No. 24.  In support of that Motion, DOD filed a concise statement of facts along with

---

[5] As the Ninth Circuit observed in a similar situation, "one wonders if [plaintiff], in its own version of the 'spaghetti approach,' has heaved the entire contents of a pot against the wall in hopes that something would stick."  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

numerous exhibits.  ECF Nos. 25 through 25-44.  Plaintiff filed an Opposition on June 27, 2022, ECF No. 33, supported by a concise statement of facts in opposition and numerous exhibits, ECF Nos. 34 through 34-15.  DOD filed a Reply on July 8, 2022, ECF No. 39, supported by a concise statement of facts in reply, ECF No. 40. The court held a hearing on the Motion on July 22, 2022.  ECF No. 41.

## III.  STANDARDS OF REVIEW

### A.    Motion to Dismiss Standards

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  In a 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

### B.    Summary Judgment Standards

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "An issue is 'genuine' only if there is a sufficient evidentiary

basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  "When the moving party has carried its burden . . . , its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"; instead, the opponent must "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence."  *In re Oracle*, 627 F.3d at 387; *see also Anderson*, 477 U.S. at 247–48 (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

When considering a motion for summary judgment, the court views the facts and draws reasonable inferences in the light most favorable to the nonmovant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "[T]he court does not make credibility determinations or weigh conflicting evidence.  Rather, it draws all inferences in the light most favorable to the nonmoving party."  *Soremekun v.*

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Moreover, it is not the court's duty to dredge through the record to determine whether the evidence unmistakably favors one side or the other—the court must instead ask whether a fair-minded jury could return a verdict for the plaintiff based on the plaintiff's presentation of the evidence.  *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Anderson*, 477 U.S. at 252.

## IV.  ANALYSIS

The court first addresses the Rule 12 side of Defendant's Motion.  To the extent Plaintiff asserts Title VII disability-discrimination and retaliation claims,[6] those claims are dismissed under Rule 12(b)(6) because "Title VII does not encompass discrimination on the basis of disability."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 n.8 (9th Cir. 2008).  The proper vehicle for Plaintiff's (a federal employee) disability-discrimination claims is the Rehabilitation Act:  "The Rehabilitation Act adopted the rights, remedies, and procedures of Title VII and made them applicable to disabled persons."  *Square v. Potter*, 2009 WL 10672825, at *2 (C.D. Cal. Mar. 23, 2009) (citing 29 U.S.C. § 794(a)(1)); *see also Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989) ("[29 U.S.C. §] 791 is the exclusive

---

[6] At the July 22, 2022 hearing, the court questioned Plaintiff's counsel as to why Title VII was included in the Complaint.  Counsel's response was somewhat unclear, but counsel did confirm that this case is a *disability* discrimination case.  Nonetheless, Title VII appears in both sections of the Complaint titled "cause of action."  *See* ECF No. 1 at PageID ## 10–11.

remedy for handicap discrimination claims by federal employees."), *overruled on other grounds by Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990). The court also dismisses under Rule 12(b)(6) Plaintiff's Rehabilitation Act retaliation claim that is related to the January 2017 accommodation request: Plaintiff admitted at the July 22, 2022 hearing that the January 2017 request cannot be the basis for a retaliation claim given that it was the "time-zero" event on Plaintiff's timeline of alleged unlawful actions.

Below, the court analyzes the Rule 56 side of Defendant's Motion with respect to Plaintiff's two remaining claims—disability discrimination and retaliation under the Rehabilitation Act.[7] Many of Plaintiff's iterations of those claims do not survive summary judgment. Specifically, six instances of Plaintiff's disability-discrimination claim fail because Plaintiff either lacks sufficient evidence of discriminatory causation or lacks sufficient evidence that she was actually discriminated against. And five instances of Plaintiff's retaliation claim fail because Plaintiff either lacks sufficient evidence of retaliatory causation or

---

[7] The court has reviewed the EEO Complaint underlying this suit and finds that the charges in that EEO Complaint encompass the claims and the allegations asserted in this case. *See Leong v. Potter*, 347 F.3d 1117, 1121–22 (9th Cir. 2003) ("[Plaintiff] was required to exhaust his administrative remedies with the EEOC before pursuing his Rehabilitation Act claim in district court. . . . The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." (citations omitted)). The court also concludes that Plaintiff's Rehabilitation Act claims survive the Rule 12 Motion to Dismiss because they present cognizable legal theories with sufficient supporting factual allegations.

lacks sufficient evidence that she was subject to an adverse employment action. Yet, two instances of Plaintiff's discrimination claim and two instances of Plaintiff's retaliation claim survive: the claims that DOD discriminated and retaliated against Plaintiff by denying reasonable accommodations relating to Plaintiff's May 2018 and October 2018 accommodation requests. Those claims survive because there are genuine issues of material fact surrounding the importance of Plaintiff's passport duties to her transportation-specialist position, e.g., whether her passport duties were an "essential function" of her position.

The court first considers the disability-discrimination claims.

## A.      Rehabilitation Act Discrimination Claims

Section 501 of the Rehabilitation Act provides the exclusive remedy for federal employees claiming discrimination based on disability. *Johnston*, 875 F.2d at 1420. Section 501 does not, however, define its own standards for disability discrimination; rather, it incorporates the standards used in the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq. *See* 29 U.S.C. § 791(f). Accordingly, "[t]o state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability (2) who is otherwise qualified for employment and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), *superseded by statute on other grounds*. The third

16

element requires but-for causation.  *See Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019) ("[A]n ADA discrimination plaintiff bringing a claim under 42 U.S.C. § 12112 must show that the adverse employment action would not have occurred but for the disability."); *cf. Smith v. Harrington*, 2015 WL 1407292, at *23 (N.D. Cal. Mar. 27, 2015) (holding that the related Section 504 of the Rehabilitation Act requires but-for causation).

The burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to discrimination claims under the Rehabilitation Act.  *See Sisson v. Helms*, 751 F.2d 991, 993 (9th Cir. 1985).  Once a plaintiff has made his prima facie showing, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its actions.  *See Smith v. Barton*, 914 F.2d 1330, 1340 (9th Cir. 1990).  If the defendant does so, the burden shifts back to the plaintiff, who must demonstrate that the defendant's proffered reason is pretextual or "encompassed unjustified consideration" of the plaintiff's disability. *Id.*  If the plaintiff fails to do so, summary judgment may be proper.  *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) ("[T]he mere existence of a prima facie case, based on the minimum evidence necessary to raise a *McDonnell Douglas* presumption, does not preclude summary judgment. . . .  In response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce 'specific, substantial

17

evidence of pretext.'" (quoting *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983))).[8]

This case involves a specific type of disability discrimination:  failure to accommodate.  *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) ("A failure to provide reasonable accommodation can constitute discrimination under section 504 of the Rehabilitation Act.").  "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."  28 C.F.R. § 35.130(b)(7)(i).  A federal employee bringing a failure-to-accommodate claim under the Rehabilitation Act must show that (1) he is a person with a disability (2) who is otherwise qualified for employment and (3) was denied a reasonable accommodation for his disability.  *See Vinson*, 288 F.3d at 1154–55; *Yonemoto v. McDonald*, 114 F. Supp. 3d 1067, 1113 (D. Haw. 2015).

---

[8] The *McDonnell Douglas* burden-shifting framework lends plaintiffs a favorable presumption in discrimination cases, which are typically grounded in circumstantial evidence of discriminatory motivations.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08 (1993) (describing the presumption).  Of course, plaintiffs need not rely on that presumption if they can produce direct evidence of discrimination.  *See Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) ("Absent direct evidence of discrimination, a Title VII plaintiff may prove his case through circumstantial evidence, following the burden-shifting framework established in *McDonnell Douglas* . . . .").  Here, however, Plaintiff produces no direct evidence of discriminatory (or retaliatory) motive.

"A 'qualified individual' under the Rehabilitation Act is an individual with a disability 'who, with or without reasonable accommodation, can perform the essential functions of [the] position.'"  *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1175 (N.D. Cal. 2014) (quoting *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998)).  "The question whether a particular accommodation is reasonable 'depends on the individual circumstances of each case' and 'requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the [position's] standards.'"  *Vinson*, 288 F.3d at 1154 (quoting *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)).  A requested accommodation is unreasonable if it would place an undue hardship on the employer.  *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 n.14 (9th Cir. 2001) (citing and applying 42 U.S.C. § 12112(b)(5)(A)).  And moving an employee's worksite from the office to the employee's home, i.e., telework, can be a reasonable accommodation depending on the circumstances.  *See id.* at 1136; *Niimi-Montalbo v. White*, 243 F. Supp. 2d 1109, 1124 (D. Haw. 2003) ("[T]here is a genuine issue of material fact as to whether or not working from home would have been a reasonable accommodation.").

###### 1.   *Discrimination—January 2017 Accommodation Request Delay and Partial Denial*

Plaintiff claims that DOD discriminated against her in its handling of the January 2017 accommodation request.  ECF No. 33 at PageID ## 534–36.  In its Motion, DOD does not challenge the disability element of this claim; the relevant disability would presumably be Plaintiff's traumatic stress, anxiety, and generalized depression.  DOD does challenge the qualified-individual element, *see* ECF No. 24-1 at PageID ## 107–10, but the court need not reach that element because there is no genuine issue of material fact as to whether DOD took a discriminatory action—it did not, as the evidence (or lack thereof) plainly establishes.

Crucially, DOD granted Plaintiff's January 2017 accommodation request by moving her to Building 45 and thus segregating her from the bothersome co-worker.  Plaintiff appears to argue that DOD discriminated against her by not granting her telework request.  *See* ECF No. 33 at PageID ## 534–35.  But as the text of the January 2017 accommodation request makes clear, Plaintiff's telework request was alternative to her request to be transferred away from the bothersome co-worker.  There is no evidence that Plaintiff retracted the latter alternative request.  Moreover, DOD was not obligated to give Plaintiff the accommodation she preferred—DOD needed only to provide *a reasonable* accommodation.  *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir.

2002).  Thus, there is no evidence of a discriminatory act or a failure to accommodate.

Plaintiff also argues that DOD discriminated against her by delaying the decision granting her accommodation.  *See* ECF No. 33 at PageID ## 535–36. To be sure, an employer that unreasonably delays the interactive process is not acting in good faith and can be liable for discrimination.  *See, e.g.*, *Linder v. Potter*, 2009 WL 2595552, at *8 (E.D. Wash. Aug. 18, 2009).  But here, DOD effectively granted Plaintiff's accommodation request roughly one month after it was presented—Mr. Gagne ordered a provisional transfer of Plaintiff to Building 45 on February 16, 2017, despite Ms. Allshouse not formally granting Plaintiff's request until November 27, 2017.  Plaintiff cannot maintain a valid discrimination claim based on this one-month delay.  *See id.* (reasoning that a five-month delay "may have been unreasonable" but that a one- or two-month delay was "less likely to be unreasonable").  Nor can she seriously argue that she suffered discrimination by waiting for the November 2017 formal decision.  *See Cole v. Fam. Dollar Stores of Md., Inc.*, 2018 WL 3818811, at *5 (D. Md. Aug. 10, 2018) (holding that plaintiff was not denied a reasonable accommodation, because the defendant "effectively granted [plaintiff] an accommodation in November, counting her absences as 'unexcused' but not 'unscheduled' in its records.").

For those reasons, no fair-minded juror could conclude that Plaintiff was discriminated against or was denied a reasonable accommodation in relation to her January 2017 accommodation request.

### 2.   Discrimination—March 2017 Momentary Denial of Leave and AWOL Charges

Plaintiff claims that DOD discriminated against her by momentarily denying her request for VLTP leave and charging her with AWOL in March 2017, despite that denial and that charge later being reversed.  *See* ECF No. 33 at PageID # 547 ("[Ms. Allshouse] falsely accused Plaintiff of being AWOL in May 2017."); *id.* at PageID ## 542–44.  DOD does not challenge the disability element or the qualified-individual element.  *See* ECF No. 24-1 at PageID ## 112–13.  DOD instead challenges the final element by emphasizing that DPAA ultimately did not take unfavorable action and, moreover, that DPAA's momentarily unfavorable decisions were not made because of Plaintiff's disability (presumably, her prior gastrectomy and lingering stomach issues).  *See id.*

DOD prevails on either ground.  Plaintiff does not dispute that the March 2017 VLTP denial and AWOL charges were later reversed by DPAA, as prompted by Plaintiff's supplemental medical documents.  Although the timing of

that reversal is unclear,[9] Plaintiff provides no evidence and cites no law supporting the theory that a modest delay in amending leave decisions—again, a delay precipitated by Plaintiff's own failure to provide adequate documentation—constitutes discrimination.

Even if the momentary leave denial and AWOL charges could be viewed as discriminatory, they were not made because of Plaintiff's disability. DOD provides evidence that it denied VLTP, and thus charged AWOL, because Plaintiff's medical documents were "insufficient to show that her condition met the definition of 'medical emergency' as required by the VLTP," not because of Plaintiff's stomach issues or some other alleged disability.  ECF No. 25-3 at PageID # 155, ¶¶ 89–90 (declaration from Ms. Allshouse).  Plaintiff provides no counterevidence on discriminatory causation.  That is, she fails to meet her corresponding burden under *McDonnell Douglas* to come forth with evidence disputing that explanation or demonstrating that it is pretextual.

Furthermore, assuming the relevant disability was Plaintiff's stomach issues, it appears that DPAA was not even aware of that disability until Plaintiff supplemented her leave request with the explanation that her "prolonged recovery [from the viral illness] could be related to her history of gastrectomy surgery."

_____

[9] The evidence suggests that the reversal occurred roughly two months after the initial denial and charges.  *See* ECF No. 25-3 at PageID # 156, ¶¶ 92–94; ECF No. 25-28 (Plaintiff's supplemental medical document dated May 16, 2017).

ECF No. 25-28; *see also* ECF No. 25-3 at PageID # 156, ¶¶ 92–94.  It is difficult to imagine how DPAA could have discriminated against Plaintiff on the basis of an undisclosed, latent disability.  Plaintiff does not explain how.

In sum, no fair-minded juror could conclude that Plaintiff was discriminated against because of her disability through the March 2017 momentary denial of leave and AWOL charges.

### 3. *Discrimination—June 2017 Threatened AWOL Charges*

Plaintiff claims that DOD discriminated against her through the June 2017 threat of AWOL charges, despite that threat never materializing.  *See* ECF No. 33 at PageID ## 545, 547–48.  DOD does not challenge the disability or qualified-individual elements.  *See* ECF No. 24-1 at PageID ## 112–13.  DOD instead challenges the final element by contending that Ms. Allshouse ultimately did not take discriminatory action and, moreover, that her threats of AWOL charges were not motivated by Plaintiff's disability (presumably, limitations related to her June 2017 thyroid-cancer surgery).  *See id.*

Even assuming that a threat of AWOL charges constitutes a discriminatory action, Plaintiff provides insufficient evidence to create a genuine issue of material fact on the causation element—whether Ms. Allshouse threatened AWOL because of Plaintiff's disability.  To be sure, Plaintiff makes a prima facie showing of causation by demonstrating that Ms. Allshouse threatened Plaintiff

24

with AWOL charges on an erroneous factual basis.  That erroneous factual basis is circumstantial evidence that Ms. Allshouse could have been frustrated with Plaintiff's disability-related absences and sought to prevent her from using the VLTP program under the guise of AWOL charges.  *See* ECF No. 25-15 at PageID # 262 (Plaintiff testifying in a deposition that she "believed that Ms. Allshouse wanted to charge [her] with AWOL to disqualify [her] from the VLTP program.").

But DOD rebuts that prima facie showing with very strong evidence of a nondiscriminatory reason:  Ms. Allshouse incorrectly calculated Plaintiff's VLTP leave *due to having incomplete information*, and thus Ms. Allshouse mistakenly threatened Plaintiff with AWOL charges without considering Plaintiff's current or past disabilities.  Ms. Allshouse declares that to be true and accurate. *See* ECF No. 25-3 at PageID ## 157–58, ¶¶ 97–105.  An email exchange between Ms. Allshouse and Plaintiff shows calculations in which Ms. Allshouse arrives at a mistaken total of 16 hours of unexcused absences.  *See* ECF No. 25-29 at PageID ## 374–75.  And in a subsequent email exchange between Ms. Allshouse and the DPAA's human resources department, Ms. Allshouse scolds her colleagues for a "communication breakdown" regarding Plaintiff's VLTP leave that left Ms. Allshouse aware of "only a 40 hour donation" and unaware of other donated leave.  ECF No. 25-18 at PageID # 324.

25

Again, Plaintiff's response fails under *McDonnell Douglas*.  She does not demonstrate in any meaningful way how DOD's proffered reason is pretextual. She merely declares that she "felt threatened and harassed by Ms. Allshouse['s] telephone call."  ECF No. 34-1 at PageID # 558, ¶ 11; *see also id.* at PageID # 562, ¶ 28 (declaring that the AWOL threat was an adverse action); *id.* at PageID ## 562–63, ¶ 30 (declaring that the AWOL threat created a hostile work environment).  That conclusory declaration is insufficient to survive summary judgment, even for the low bar that is discriminatory causation.  *See, e.g.*, *Martinez v. Marin Sanitary Serv.*, 349 F. Supp. 2d 1234, 1243 (N.D. Cal. 2004) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." (citation and internal quotation marks omitted)).

What's more, Plaintiff admits that when Ms. Allshouse made the threat of AWOL charges, Ms. Allshouse was under the impression that Plaintiff had received only 40 hours of VLTP leave out of the required 56 hours; and Plaintiff also concedes that Ms. Allshouse ultimately did not charge Plaintiff with AWOL "after [Ms. Allshouse] learn[ed] about Plaintiff's [additional] donated and

advance leave."[10]  Those admitted facts bolster the DOD's legitimate, nondiscriminatory reasons for the threatened AWOL charges.

Even viewing the evidence in a light most favorable to Plaintiff, no fair-minded juror could conclude that Plaintiff was discriminated against because of her disability through the June 2017 threatened AWOL charges.

### 4.    *Discrimination—July 2017 Warning Letter*

In the same phone call in which Ms. Allshouse mistakenly threatened Plaintiff with AWOL charges, those two individuals had what can be fairly described as a "blow up."  Ms. Allshouse summarizes Plaintiff's behavior as an unprofessional temper tantrum, marked by yelling and disrespectful remarks. Plaintiff denies throwing a temper tantrum and instead characterizes Ms. Allshouse's behavior on the call as threatening and harassing.  The blow up resulted in a warning letter from Ms. Allshouse in which she rebuked Plaintiff for her "unprofessional" and "disrespectful" behavior and promised to take disciplinary action unless Plaintiff improved her demeanor.  ECF No. 25-30. Plaintiff claims that DOD's warning letter constituted illegal discrimination.  *See* ECF No. 33 at PageID # 548.

---

[10] *Compare* ECF No. 25 at PageID ## 122–23, ¶¶ 27, 30, *with* ECF No. 34 at PageID # 551 (admitting to "Nos. . . . 27, 30").

Again, the relevant dispute centers on discriminatory causation, as DOD does not challenge the disability or qualified-individual elements.  *See* ECF No. 24-1 at PageID # 113.  Plaintiff's declaration supporting her side of the story—i.e., that she did not throw a temper tantrum—is sufficient evidence for her prima facie showing.  *See* ECF No. 34-1 at PageID # 558, ¶ 11.  DOD rebuts that showing with evidence indicating that Ms. Allshouse truly believed that Plaintiff acted unprofessionally on the June 2017 phone call:  Ms. Allshouse declares such a belief.  ECF No. 25-3 at PageID # 157, ¶¶ 101–02.  In an email exchange with Ms. Allshouse, a witness to Plaintiff's side of the phone call states that she recalls Plaintiff having a "temper tantrum over the phone" that included "unclassy, unprofessional, and disrespectful" conduct.  ECF No. 25-18 at PageID # 329.  And Plaintiff admitted in a deposition that she got "upset with [Ms. Allshouse]" on the phone call.  ECF No. 25-15 at PageID # 261.  In rebuttal, Plaintiff maintains her self-supported position that she did not act unprofessionally.  *See, e.g.*, ECF No. 34-15 at PageID # 713 (Plaintiff testifying in the same deposition that she did not think her behavior was unprofessional).

The evidence plainly demonstrates that the phone call was antagonistic and heated.  Plaintiff makes a factual dispute out of whether her contentious behavior rose to the level of unprofessional behavior.  But that factual dispute ultimately is immaterial to the question of discriminatory causation.

28

Assuming Plaintiff is correct in that she acted contentiously but professionally, such a fact might make Ms. Allshouse's warning letter improper under DOD regulations, but it would not squarely rebut DOD's evidence that Ms. Allshouse issued the letter under a good faith belief that the letter was administratively warranted, not because of a discriminatory motive.  Ms. Allshouse may have blown Plaintiff's verbal remarks out of proportion, or even misapplied the relevant DOD standard for unprofessional behavior, but those mistakes do not mean that Ms. Allshouse issued the warning letter in order to discriminate against Plaintiff based on her disability— in other words, those mistakes do not demonstrate that Ms. Allshouse's belief was false or pretextual.  On that question, Plaintiff's evidence is too weak to survive summary judgment, even when viewed in a light most favorable to Plaintiff.  No fair-minded juror could conclude that Ms. Allshouse issued the warning letter because of Plaintiff's disability.

> ### 5.    *Discrimination—May 2018 Denial of Accommodation Request*

Plaintiff claims that DOD discriminated against her by denying the May 2018 accommodation request to telework.  ECF No. 33 at PageID ## 536, 538–44.  DOD does not challenge the disability element, but it does contend that Plaintiff was not a qualified individual and that Plaintiff requested an unreasonable accommodation.  *See* ECF No. 24-1 at PageID ## 107–10.  The relevant disability

is presumably Plaintiff's tentative diagnosis of breast cancer and the effects from her mastectomy.

DOD specifically argues that Plaintiff was not a qualified individual, because she was unable to perform her passport duties—an "essential function" of her position, according to DOD—while working from home.  *See id.*  DOD makes a related argument that Plaintiff's request to telework was an unreasonable request because it would have required other members of the DPAA travel team to handle Plaintiff's passport-related tasks, causing undue hardship to DPAA's operations. *See id.*  Hence, DOD's challenges to the second and third elements of Plaintiff's claim turn on the same question:  How significant were Plaintiff's passport duties to her work as a transportation specialist?  *See Yonemoto*, 114 F. Supp. 3d at 1113 ("Where the plaintiff's Rehabilitation Act claim is based on a denial of reasonable accommodation, the inquiry of whether the plaintiff can perform the essential functions with or without reasonable accommodation appears to largely overlap the third element of the plaintiff's claim . . . .").

On that question, Plaintiff makes a strong showing with the following evidence:  Her work as a transportation specialist consisted primarily of making travel arrangements for military and federal employees over the computer, not processing passports.  ECF No. 34 at PageID ## 552–53, ¶¶ 2, 10; ECF No. 34-1 at PageID ## 557, 560, ¶¶ 6, 17 (Plaintiff declaration); ECF No. 34-11 at PageID

## 627–636 (ten-page annual review that discusses passport duties on only one page).  She rarely performed passport-related tasks—in fact, Ms. Allshouse did not assign Plaintiff any passport duties during the period relevant to this case.  *See* ECF No. 34-1 at PageID # 560, ¶ 17.  And Plaintiff makes a common-sense argument that granting her May 2018 accommodation request would have caused her to be absent for only a brief period, limiting the burden associated with assigning her passport-related tasks to co-workers.  *See* ECF No. 33 at PageID # 537.

DOD counters with the following evidence:  Plaintiff's performance of her passport duties was evaluated in her yearly performance reviews.  *See, e.g.*, ECF No. 25-21 at PageID # 350.  Plaintiff's passport duties were explicitly addressed in Ms. Allshouse's formal acceptance of the January 2017 accommodation request.  *See* ECF No. 25-25 at PageID ## 361–62.  Plaintiff testified in a deposition that, regarding her passport duties, "I can do them at [Building] 45, and I do do them at [Building] 45."  ECF No. 25-15 at PageID # 257.  And Ms. Allshouse provides a declaration describing why passport processing is crucial to DPAA, how passport processing requires sensitive administrative tasks to be performed in person, and how Plaintiff's absence from Building 4077 posed an undue hardship on the DPAA travel team.  *See* ECF No. 25-3 at PageID ## 148–50, 162–63, ¶¶ 60–68, 131–37.

Although DOD's rebuttal case is also strong, it is not strong enough to prevail at summary judgment. The evidence establishes a genuine issue of material fact as to the significance of Plaintiff's passport duties—more specifically, whether those duties represent an essential function of Plaintiff's position and whether Plaintiff's abdicating those duties (through telework) would have placed an undue burden on DPAA. In support of that conclusion, the court notes one piece of evidence favoring Plaintiff's claim that the parties did not address: During the nine-month period between Plaintiff's transfer to Building 45 and Ms. Allshouse's formal acceptance of the January 2017 accommodation request, Plaintiff's passport-duties were actually "suspended." *Compare* ECF No. 25-24 at PageID # 358 (February 24, 2017 email in which Ms. Allshouse states that Plaintiff's "responsibility as a Passport Agent is temporarily SUSPENDED"), *with* ECF No. 25-25 at PageID ## 361–62 (making adjustments to Plaintiff's passport duties to comport with her transfer to Building 45). DOD's nine-month delay in implementing procedural changes to enable Plaintiff to perform passport duties from Building 45 suggests that those duties were not very significant after all.[11]

---

[11] Because Plaintiff's discrimination claim (based on the May 2018 accommodation request) survives on a factual dispute over the significance of her passport duties, the court need not address Plaintiff's theory that she was discriminated against by DOD's failure to engage in an interactive process relating to the May 2018 request. *See* ECF No. 33 at PageID ## 538–39; *see also Vinson*, 288 F.3d at 1154 ("An employer who fails to engage in such an interactive process in good faith may incur liability if a reasonable accommodation would have been possible." (citation and internal quotation marks omitted)).

For those reasons, Plaintiff has created genuine issues of material fact on each element of her discrimination claim relating to the May 2018 accommodation request.

**6.      *Discrimination—October 2018 Denial of Accommodation Request***

Plaintiff claims that DOD discriminated against her by denying the October 2018 accommodation request to telework.  ECF No. 33 at PageID ## 537–44.  DOD again argues that Plaintiff was not a qualified individual and that Plaintiff requested an unreasonable accommodation.  *See* ECF No. 24-1 at PageID ## 107–10.  Because DOD's challenges are governed by the same evidence analyzed above with respect to the May 2018 accommodation request, Plaintiff's claim survives unless DOD can show that there is no genuine issue of material fact regarding the disability element.

DOD appears to contend that Plaintiff was not disabled in relation to the October 2018 request because her prior tentative diagnosis of breast cancer turned out incorrect in light of the subsequent biopsy.  *See id.* at PageID # 113 ("Plaintiff has admitted that she was not diagnosed with breast cancer.").  Put differently, although Plaintiff may have initially been disabled due to the tentative diagnosis in early 2018, she was no longer disabled as of October 2018, according to DOD.  *See id.*

33

But DOD's theory downplays the seriousness of Plaintiff's medical history.  DOD does not dispute that Plaintiff was disabled as of spring 2018 when she was tentatively diagnosed with breast cancer and suffered from significant physical (and mental) limitations caused by her double mastectomy.  *See* ECF No. 40 at PageID # 795, ¶ 12 (admitting that Plaintiff was determined to be an "individual with a disability" in relation to the May 2018 accommodation request). The insight gained from Plaintiff's biopsy did not retroactively wipe away that disability.  *Cf. Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018) (explaining that an individual can be disabled under the ADA by virtue of "a physical or mental impairment that substantially limits one or more major life activities of such individual" or by "*being regarded as* having such an impairment" (emphasis added) (quoting 42 U.S.C. § 12102(1)(A)–(C))); 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

And even if Plaintiff's breast reconstruction surgery in fall 2018 could be viewed by some, in isolation, as an elective, cosmetic surgery unsupportive of a

34

disability designation (a highly questionable assumption),[12] it is wrong to view that surgery in isolation because the reconstruction surgery was necessitated by the lingering effects of her prior disability, i.e., the double mastectomy.  When the lingering effects of a medically-necessary procedure are shown to currently limit major life activities to a substantial degree—including by requiring physical recovery from a remedial surgery—those lingering effects constitute disabilities. *See* 42 U.S.C. § 12102(1)(A) (defining disability as, *inter alia*, "a physical . . . impairment that substantially limits one or more major life activities of such individual"); *cf. Rader v. Napolitano*, 2011 WL 13143717, at *2 (C.D. Cal. Aug. 10, 2011) (granting summary judgment against an ADA claim where the plaintiff asserted disabilities "due to the lingering effects of surgery she had when she underwent treatment for breast and thyroid cancer several years ago," but where the plaintiff provided no evidence of how those lingering effects currently limited her major life activities).  Plaintiff makes such a showing.  *See* ECF No. 34-7 at PageID # 601 (Plaintiff's physician stating that the reconstruction surgery would prevent Plaintiff from "lifting, reaching, pushing, pulling, [upward] body movement"); *id.* at PageID # 604 (Plaintiff's physician stating that the

---

[12] *Cf. Baker v. Greyhound Bus Line*, 240 F. Supp. 2d 454, 455 (D. Md. 2003) ("Likewise, albinism does not constitute a disability within the meaning of the Americans with Disabilities Act.  It does not appear to be a 'cosmetic disfigurement' within the meaning of the definition of 'physical or mental impairment' within the Justice Department's ADA regulations.").

reconstruction surgery would make Plaintiff "unable to perform her usual duties" for a period of time, and that "6 weeks post operative [rest was recommended] to prevent breast seromas, dehiscence of incisions, and to promote proper healing of breasts"); *see also* 42 U.S.C. § 12102(2)(A) ("[M]ajor life activities include, but are not limited to, . . . standing, lifting, bending, speaking, . . . and working.").

For those reasons, Plaintiff has created genuine issues of material fact on each element of her discrimination claim relating to the October 2018 accommodation request.

### 7.    *Discrimination—October 2018 Denial of Leave Requests*

Plaintiff claims that DOD discriminated against her by denying the October 2018 requests for FMLA and VLTP leave.  ECF No. 33 at PageID ## 542–43, 546.  DOD contends that Plaintiff was not disabled in October 2018, *see* ECF No. 24-1 at PageID # 113, but that argument is rejected based on the analysis provided in the preceding subsection.  DOD also challenges the discriminatory-causation element.  *See id.* at PageID # 114.

DOD prevails on that challenge because Plaintiff fails to produce evidence sufficient to create a genuine issue of material fact as to whether her October 2018 leave requests were denied because of her disability.  In fact, she provides no evidence at all pertaining to causation.  And she has admitted that Ms. Allshouse "denied FMLA [because] it exceeded the 12-week entitlement

during any 12-month period," and that Ms. Allshouse "initially denied VLTP [because] Plaintiff's medical documentation was not administratively acceptable." *Compare* ECF No. 25 at PageID # 123, ¶ 34, *with* ECF No. 34 at PageID # 551 (admitting to "Nos. . . . 34"). Those reasons for denying leave are legitimate and nondiscriminatory. And again, Plaintiff has not met her corresponding burden under *McDonnell Douglas*. Accordingly, no fair-minded juror could conclude that Ms. Allshouse denied Plaintiff's October 2018 leave requests because of a disability.[13]

### 8.    *Discrimination—February 2019 Leave Restriction*

Plaintiff claims that the February 2019 leave restriction was discriminatory. ECF No. 33 at PageID ## 546, 548. DOD challenges the discriminatory-causation element. *See* ECF No. 24-1 at PageID ## 114–15 ("[The] leave restriction was objectively warranted.").

DOD prevails on the causation element. Plaintiff does make a prima facie showing on causation by declaring that the leave restriction improperly

---

[13] Plaintiff complains that she "had to take leave without pay to cover [her] medically required absences" in relation to the October 2018 accommodation request and leave requests. ECF No. 34-1 at PageID # 560, ¶ 18. True enough, if Plaintiff prevails at trial on her discrimination claim relating to the October 2018 accommodation request, she may be entitled to damages for any lost wages that could have been earned under a telework arrangement. But that potential entitlement does not influence the propriety of Ms. Allshouse's FMLA and VLTP leave denials, denials that are analytically separate from a reasonable accommodation under the ADA. Further, the Complaint makes no specific claim for violations of the FMLA.

considered "medical and disability leaves [used] in 2018 for [her] medical disabilities."  ECF No. 34-1 at PageID # 561, ¶ 19.  But DOD rebuts that showing with the following evidence:  Plaintiff missed a total of 1,015 hours out of 2,088 workable hours between January 7, 2018 and January 5, 2019.  ECF No. 25-3 at PageID # 161, ¶¶ 127–28 (declaration from Ms. Allshouse).  Plaintiff exceeded the allowable number of hours absent without giving advance notice, i.e., "unscheduled leave."  *Id.* at PageID # 162, ¶¶ 129–30.  And Ms. Allshouse issued the leave restriction after extensive consultation with DPAA's human resources department and office of general counsel, ultimately concluding that Plaintiff's absences were having an increasingly negative impact on the DPAA travel team.  *See id.* at PageID ## 162–64, ¶¶ 131–42.

Plaintiff provides no evidence specifically rebutting DOD's showing; instead, she stands behind her general assertion that the leave restriction was premised on absences caused by medical issues and related disabilities.  *See* ECF No. 34 at PageID # 554, ¶ 17; *see also* ECF No. 33 at PageID # 548 ("The link between the disability and letters of leave restriction is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability.").  In other words, Plaintiff provides no specific evidence demonstrating that DOD's legitimate, nondiscriminatory reasons for implementing the leave restriction are

38

pretextual or encompass unjustified consideration of her disability.  She thus fails to create a genuine issue of material fact as to whether Ms. Allshouse issued the leave restriction because of Plaintiff's disability.

On the issue of specific evidence, it is worth comparing Plaintiff's evidentiary showing to an evidentiary showing in a prior case, *Sing v. Hawaiian Airlines, Inc.*, 2021 WL 5310896 (D. Haw. Nov. 15, 2021).  In *Sing*, this court denied summary judgment against the plaintiff-employee's ADA discrimination claim.  *Id.* at *14.  The central dispute was whether the defendant-employer had included disability-related absences in support of a termination decision—in effect, whether the plaintiff had been terminated because of his disability.  *See id.* at *7–11.  The parties disputed as a general matter whether the tally of disability-related and non-disability-related absences came out in their favor, as the parties do in this case.  *See id.*  But the *Sing* plaintiff specifically identified—with supporting evidence—the absences that had been improperly considered in the termination decision.  *See id.* at *7–8.  The court viewed those specific factual contentions in the light most favorable to the plaintiff and found a genuine issue of material fact on the ADA discrimination claim.  *Id.* at *10–11.

Unlike the plaintiff in *Sing*, Plaintiff in this case fails to provide specific evidence of—or to even identify—the disability-related absences that should not have been considered in support of the leave restriction.  DOD's

39

nondiscriminatory reason for implementing the leave restriction—Plaintiff's exceeding the permitted amount of unscheduled leave—thus remains unrebutted and cannot be assumed pretextual or unjustified. Notably, Plaintiff's showing is more like the *defendant*'s showing in *Sing*, which amounted to a general assertion that there were sufficient absences to justify termination. Just like the *Sing* defendant, Plaintiff expects this court to "dredge through the record, like a pig sniffing out truffles, in search of evidence that [Plaintiff] should have presented in its [papers]." *Id.* at *11. The court will not do so. *See Keenan*, 91 F.3d at 1279 ("As other courts have noted, '[i]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

In sum, given the dearth of evidence in support of discriminatory causation, no fair-minded juror could conclude that Ms. Allshouse issued the February 2019 leave restriction because of Plaintiff's disability.

**B.     Rehabilitation Act Retaliation Claims**

To make a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the

protected activity and the adverse employment action.  *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (defining elements for retaliation under the ADA); *Brooks v. Capistrano Unified Sch. Dist.*, 1 F. Supp. 3d 1029, 1035–36 (C.D. Cal. 2014) ("[T]he legal elements and the production of proof for a retaliation claim under the Rehabilitation Act is the same as that used under the ADA.").  The third element requires but-for causation.  *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) ("The but-for causation standard therefore applies equally to retaliation under Titles I and II [of the ADA].").  The *McDonnell Douglas* burden-shifting framework applies to Rehabilitation Act retaliation claims just as it applies to Rehabilitation Act discrimination claims.  *See Brenneise*, 806 F.3d at 473; *Brooks*, 1 F. Supp. 3d at 1035–36.

### 1. *Retaliation—March 2017 Momentary Denial of Leave and AWOL Charges*

To the extent Plaintiff claims that the March 2017 momentary denial of leave and AWOL charges were retaliatory,[14] that claim does not survive summary judgment, because there is insufficient evidence of a causal connection

---

[14] Plaintiff does not explicitly identify such a claim in her Opposition, but a broad reading of the Complaint could support such a claim, and DOD challenges such a claim, *see* ECF No. 24-1 at PageID # 113.  In that regard, the court found the chaotic, scattershot style of Plaintiff's Opposition (and Plaintiff's Complaint) to greatly increase the difficulty of ruling on Defendant's Motion.  That is especially true with respect to Plaintiff's retaliation claim—the court has struggled to discern on which factual allegations she asserts her claim.

between a protected activity and the leave denial or the AWOL charges.  As discussed above with respect to the related discrimination claim, the evidence demonstrates that DOD denied VLTP, and thus charged AWOL, because Plaintiff's medical documentation was insufficient to show that her medical condition was eligible for VLTP.  That is a legitimate, nonretaliatory reason for denying leave and charging AWOL.  And again, Plaintiff provides no evidence demonstrating that DOD's legitimate, nonretaliatory reason is pretextual. Accordingly, no fair-minded juror could conclude that a protected activity was the but-for cause of the March 2017 denial of leave or AWOL charges.

## 2.    *Retaliation—June 2017 Threatened AWOL Charges*

To the extent Plaintiff claims that she was retaliated against through the June 2017 threatened AWOL charges, that claim does not survive summary judgment, because there is insufficient evidence of a causal connection between a protected activity and the threatened AWOL charges.  As discussed above with respect to the related discrimination claim, DOD provides very strong evidence that Ms. Allshouse threatened AWOL charges under a mistaken, but good faith, belief:  Ms. Allshouse incorrectly calculated Plaintiff's VLTP leave due to having incomplete information, and thus Ms. Allshouse threatened Plaintiff with AWOL charges due to a mistake, not a malicious motive.  Plaintiff provides no counter-evidence linking the AWOL charges with a protected activity or otherwise

demonstrating that DOD's legitimate, nondiscriminatory reason is pretextual.  As a result, no fair-minded juror could conclude that a protected activity was the but-for cause of the June 2017 threatened AWOL charges.

### 3.    Retaliation—July 2017 Warning Letter

Plaintiff claims that Ms. Allshouse issued the July 2017 warning letter in retaliation for Plaintiff's seeking VLTP leave to cover absences caused by the June 2017 thyroid-cancer surgery.  *See* ECF No. 33 at PageID # 548.  DOD does not challenge the protected-activity element or the adverse-employment-action element.  *See* ECF No. 24-1 at PageID # 113.  Instead, DOD contends that there is no evidence of a causal connection.  *See id.*

With respect to the warning letter, the analysis of retaliatory causation unfolds in a manner similar to the analysis of discriminatory causation presented above.  Specifically, the parties agree that the phone call precipitating the warning letter was antagonistic and heated.  Plaintiff makes a factual dispute out of whether her contentious behavior rose to the level of unprofessional behavior.  But that dispute does not undercut—much less rebut—DOD's evidence that Ms. Allshouse issued the letter under a good faith belief that the letter was administratively warranted.  As stated above, Ms. Allshouse may have blown Plaintiff's verbal remarks out of proportion, or even misapplied the relevant DOD standard for unprofessional behavior, but those mistakes do not mean that Ms. Allshouse issued

the letter in order to retaliate against Plaintiff's request for VLTP leave.  On that question, Plaintiff's evidence of pretext is too weak to survive summary judgment, even when viewed in a light most favorable to Plaintiff—no fair-minded juror could conclude that Ms. Allshouse issued the warning letter as retaliation.

### 4.   *Retaliation—May 2018 Denial of Accommodation Request*

Plaintiff claims that her May 2018 accommodation request was denied in retaliation for her filing and litigating the EEO Complaint.  *See* ECF No. 33 at PageID ## 544–46.  DOD challenges the retaliatory-causation element of that claim.  *See* ECF No. 24-1 at PageID ## 108–10.

Plaintiff produces some evidence of causation through the temporal proximity between her May 2018 request and her EEO Complaint, which she filed in September 2017, *see* ECF No. 34-8, and litigated all the way through March 2021, *see* ECF No. 25 at PageID ## 119–20, ¶¶ 1–6 & ECF No. 25-10 at PageID # 221.  *See also* ECF No. 33 at PageID # 549 (Plaintiff arguing that she "engaged in protected activity by filing her EEO complaints in 2017 and 2018 for reasonable accommodation due to disability discrimination.  In 2018[,] she requested reasonable accommodations which were denied by the same supervisor, Ms. Allshouse.").  Also, at the July 22, 2022 hearing, Plaintiff more generally argued that the antagonistic history between Ms. Allshouse and Plaintiff—specifically, their contentious phone call, the EEO Complaint covering some of Ms. Allshouse's

actions, and Plaintiff's going over Ms. Allshouse's authority by requesting an accommodation from Mr. Gagne in 2017—provides further basis for inferring retaliatory causation.  The court finds that evidence sufficient for Plaintiff's prima facie showing on retaliatory causation.  *See Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) ("[T]he timing of these events suffices to establish a minimal prima facie case of retaliation . . . .").

In rebuttal, DOD contends that DPAA denied Plaintiff's May 2018 telework request for a legitimate, nonretaliatory reason:  Plaintiff could not perform her essential passport duties from home, and thus she was not a qualified individual for purposes of the accommodation request.  *See* ECF No. 24-1 at PageID ## 108–10.

The problem with that rebuttal, as with the related discrimination claim, is that there is a genuine issue of material fact as to whether passport duties were an essential function of Plaintiff's position (and also whether Plaintiff's telework request was unreasonable, for similar reasons).  A fair-minded juror could resolve those factual issues in Plaintiff's favor and infer from Plaintiff's evidence that Ms. Allshouse denied the May 2018 accommodation request in retaliation for the EEO Complaint.  Summary judgment is thus denied as to this retaliation claim.

### 5.   *Retaliation—October 2018 Denial of Accommodation Request*

Similarly, Plaintiff's claim that the denial of her October 2018 accommodation request was retaliatory survives summary judgment because DOD challenges only the retaliatory-causation element, *see id.*, and because Plaintiff makes a prima facie showing of causation, through temporal proximity, that DOD has not rebutted with evidence of legitimate, nonretaliatory reasons.  Specifically, DOD contends that it denied the October 2018 telework request for the legitimate, nonretaliatory reason that Plaintiff could not perform her essential passport duties from home, and thus she was not a qualified individual for purposes of the accommodation request.  *See id.*  But there are genuine issues of material fact surrounding the importance of Plaintiff's passport duties.  A fair-minded juror could resolve those factual issues in Plaintiff's favor and infer from Plaintiff's evidence that Ms. Allshouse denied the October 2018 accommodation request in retaliation for the EEO Complaint.  Summary judgment is thus denied as to this retaliation claim.

### 6.   *Retaliation—October 2018 Denial of Leave Requests*

To the extent Plaintiff claims that the October 2018 denial of leave requests was retaliatory, that claim does not survive summary judgment, because there is insufficient evidence of retaliatory causation, i.e., that Ms. Allshouse denied the leave requests because of a protected activity.  Plaintiff provides no

evidence of retaliatory causation.  In fact, as discussed above with respect to the related discrimination claim, Plaintiff admits that Ms. Allshouse "denied FMLA [because] it exceeded the 12-week entitlement during any 12-month period," and that Ms. Allshouse "initially denied VLTP [because] Plaintiff's medical documentation was not administratively acceptable."  Those are legitimate, nonretaliatory reasons for denying leave.  No fair-minded juror could, therefore, conclude that Ms. Allshouse denied Plaintiff's October 2018 leave requests because of a protected activity.

### 7.    *Retaliation—February 2019 Leave Restriction*

Plaintiff claims that the February 2019 leave restriction was retaliatory.  ECF No. 33 at PageID # 548.  More specifically, Plaintiff claims that "[u]sing leaves due to disabilities as grounds for a leave restriction is retaliation." *Id.*  DOD contends that the leave restriction was not an adverse employment action and, even if it was, there is no causal connection between the leave restriction and a protected activity.  ECF No. 24-1 at PageID ## 114–15.  On the adverse-action element, DOD argues that the leave restriction is not adverse, because the language of the restriction makes clear that it was "not a disciplinary action" and that it would merely be "considered in determining an appropriate remedy (penalty) should a future offense occur."  *Id.* (quoting ECF No. 25-41 at PageID # 424).

But DOD's view of an adverse employment action is too narrow under Ninth Circuit law.  *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) ("[O]ur prior cases situate us with those circuits that define adverse employment action broadly. . . .  We have found that a wide array of disadvantageous changes in the workplace constitute adverse employment actions.").  "[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity."  *Id.* at 1243.  Examples of adverse actions include "lateral transfers, unfavorable job references, and changes in work schedules."  *Id.*  Examples of non-adverse actions include offensive statements or ostracism by coworkers (as long as there is no effect on the employee's ability to perform his/her job).  *See id.*; *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).  The court holds that there is a genuine issue of material fact as to whether the February 2019 leave restriction was reasonably likely to deter Plaintiff from engaging in protected activity, under the circumstances of this case.  That holding accords with decisions from other courts that have concluded that placing limitations on an employee's leave can constitute an adverse employment action.  *See, e.g.*, *Lang v. Astrue*, 2011 WL 2149914, at *6 (S.D. Cal. June 1, 2011) (holding that the plaintiff "suffered adverse employment actions when he was placed on leave restrictions").

Nonetheless, DOD prevails on its second contention—that there is insufficient evidence of a causal connection between the leave restriction and a protected activity.  As discussed above with respect to the related discrimination claim, DOD makes a strong showing of legitimate, nonretaliatory reasons for implementing the leave restriction:  Plaintiff was absent for 1,015 out of 2,088 workable hours; Plaintiff exceeded the maximum amount of unscheduled leave; and Ms. Allshouse issued the leave restriction after extensive consultation with DPAA's human resources department and office of general counsel, ultimately concluding that Plaintiff's absences were having an increasingly negative impact on the DPAA travel team.

Plaintiff provides no evidence specifically rebutting DOD's showing; instead, she stands behind her general assertion that the leave restriction was premised on absences caused by medical issues and related disabilities.  *See* ECF No. 34-1 at PageID # 561, ¶ 19.  She fails to provide—or to even identify— specific evidence that the disability-related absences should not have been considered in support of the leave restriction.  As discussed above, Plaintiff cannot expect this court to scour the record in search of a genuine issue of material fact supporting her retaliation claim.  Given Plaintiff's failure to rebut DOD's nonretaliatory reasons for issuing the leave restriction, no fair-minded juror could

49

conclude that Ms. Allshouse issued the February 2019 leave restriction in retaliation for Plaintiff's claiming disability-related leave.[15]

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's "Motion to Dismiss Complaint, or in the Alternative, for Summary Judgment," ECF No. 24, is GRANTED in part and DENIED in part.  The Motion to Dismiss is GRANTED with respect to Plaintiff's Title VII discrimination claim, Title VII retaliation claim, and Rehabilitation Act retaliation claim premised on the June 2017 accommodation request—those claims are dismissed without leave to amend.  The Motion for Summary Judgment is DENIED with respect to Plaintiff's Rehabilitation Act discrimination and retaliation claims that are premised on the May 2018 and October 2018 accommodation denials.  And the Motion for

---

[15] Lastly, in support of the Opposition to Defendant's Motion, Plaintiff's counsel attaches a declaration in which counsel raises, in scattershot style, seven-pages worth of objections to Defendant's exhibits.  *See* ECF No. 34-4.  Plaintiff's counsel improperly raises those legal arguments in a declaration when they should have been raised in the memorandum supporting the Opposition.  And even if the court were to consider those legal objections, the court would overrule those objections because they are either aimed at evidence not relied upon by the court in reaching its decision or are overly concerned with the form of Defendant's evidence (instead of its contents).  *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents.").

Summary Judgment is GRANTED as to the remainder of Plaintiff's claims under the Rehabilitation Act.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, August 2, 2022.



       /s/ J. Michael Seabright
      J. Michael Seabright
      Chief United States District Judge

*Martin v. Austin*, Civ. No. 21-00284 JMS-KJM, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 24